**NOTICE:   SLIP OPINION**
**(not the court's final written decision)**

The opinion that begins on the next page is a slip opinion.  Slip opinions are the written opinions that are originally filed by the court.

A slip opinion is not necessarily the court's final written decision.  Slip opinions can be changed by subsequent court orders.  For example, a court may issue an order making substantive changes to a slip opinion or publishing for precedential purposes a previously "unpublished" opinion.  Additionally, nonsubstantive edits (for style, grammar, citation, format, punctuation, etc.) are made before the opinions that have precedential value are published in the official reports of court decisions: the Washington Reports 2d and the Washington Appellate Reports.  An opinion in the official reports replaces the slip opinion as the official opinion of the court.

**The slip opinion that begins on the next page is for a published opinion, and it has since been revised for publication in the printed official reports.**  The official text of the court's opinion is found in the advance sheets and the bound volumes of the official reports.  Also, an electronic version (intended to mirror the language found in the official reports) of the revised opinion can be found, free of charge, at this website: https://www.lexisnexis.com/clients/wareports.

For more information about precedential (published) opinions, nonprecedential (unpublished) opinions, slip opinions, and the official reports, see https://www.courts.wa.gov/opinions and the information that is linked there.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 81186-0-I |
| | ) | |
| Respondent, | ) | DIVISION ONE |
| | ) | |
| v. | ) | PUBLISHED OPINION |
| | ) | |
| DANIEL ACHAW ZWEDE, | ) | |
| | ) | |
| Appellant. | ) | |
| | ) | |

ANDRUS, C.J. — In 2014, Daniel A. Zwede pleaded guilty to one count of first degree rape of a child for a crime he committed at the age of 19. He was sentenced, pursuant to an agreed recommendation, to a Special Sex Offender Sentencing Alternative (SSOSA).[1] The trial court imposed an indeterminate standard range sentence of 120 months to life in prison, but suspended that sentence if Zwede complied with certain conditions while living in the community. Five years later, the trial court revoked Zwede's SSOSA and imposed the previously suspended indeterminate sentence.

Zwede does not appeal the trial court's findings that he violated the terms of his SSOSA or its decision to revoke it. Instead, he appeals the imposition of the indeterminate sentence, arguing that the trial court had the discretion under the SSOSA statute to impose a sentence below the standard range set out in his

---

[1] RCW 9.94A.670.

Citations and pin cites are based on the Westlaw online version of the cited material.

No. 81186-0-I/2

original judgment and sentence. He further contends that his indeterminate sentence violates article I, section 14 of the Washington Constitution because the trial court imposed it without considering his youthfulness at the time he committed his crime. Finally, Zwede maintains his trial counsel was ineffective for not raising his youthfulness when Zwede entered the plea and agreed to the SSOSA.

We conclude that RCW 9.94A.670 does not give trial courts the discretion to modify an original suspended indeterminate sentence at a revocation hearing. We further hold that neither the Eighth Amendment of the United States Constitution, nor article I, section 14 of the Washington State Constitution required the trial court to resentence Zwede and take into account his age at the time he committed the underlying crime when, as a 25-year-old adult, he violated the terms of a SSOSA sentence to which he had agreed.

Finally, we conclude Zwede did not receive ineffective assistance of counsel when his attorney chose not to argue for an exceptional downward departure from the sentencing guidelines based on Zwede's youthfulness at the time of the crime. Nothing in this record suggests the State would have agreed to a SSOSA sentence, under which Zwede avoided serving any prison time, had Zwede not agreed to a standard range indeterminate sentence as a part of the plea agreement.

We therefore affirm Zwede's sentence.

FACTS

In March 2013, the State charged Daniel Zwede with two counts of first degree rape of a child for crimes Zwede allegedly committed against his 9-year-

- 2 -

old niece, R.A.A.  In September 2014, Zwede pleaded guilty to a single count of first degree rape of a child.  Zwede admitted that between September 2011 and March 2013, he had had sexual intercourse with R.A.A.  Zwede, born in November 1992, was 19 or 20 at the time.  R.A.A. was 8 or 9 years old during this period.

In exchange for the plea, the State agreed to dismiss the second rape count and to recommend a SSOSA.  Under the terms of the SSOSA, the parties agreed to a standard range indeterminate sentence of 120 months to life in prison,[2] with credit for time served, with the prison term suspended as long as Zwede made reasonable progress in a five-year sexual deviancy treatment program and complied with all Department of Corrections (DOC) conditions of supervision.

At his plea hearing, the trial court confirmed Zwede's understanding that if he violated the terms of the SSOSA and the court imposed the balance of his sentence, he would be in prison for a minimum term of 10 years and face possible imprisonment for life.  Zwede acknowledged the risks associated with violating the SSOSA sentence.  The trial court accepted Zwede's plea, finding that he understood the elements of the crime, was aware of the rights he was forfeiting, and understood "all actual and potential consequences of [his] plea."

At the sentencing hearing, both the State and Zwede urged the trial court to follow the parties' joint sentencing recommendation for a SSOSA.  Neither party addressed Zwede's youthfulness at the time of the offense.  The only reference to his age occurred when Zwede's attorney asked the court to impose the SSOSA so

---

[2] The standard range for Zwede's crime was 93 to 123 months as a minimum sentence, with life in prison as the statutory maximum.

No. 81186-0-I/4

that Zwede, who would soon turn 21, could pursue a GED[3] certificate.  The court accepted this negotiated sentence recommendation and imposed a SSOSA consistent with the plea agreement.

The judgment and sentence set five annual review hearings, each occurring in August, starting in 2015, with a treatment termination hearing in August 2019. Appendix H of the judgment and sentence prohibited Zwede from having direct contact with his victim, required him to obtain a sexual deviancy evaluation and to follow all treatment recommendations, required him to inform his community corrections officer of any dating relationships, prohibited any sexual contact without his treatment provider's approval, and prohibited any contact with minors without the supervision of a responsible adult with knowledge of his conviction.  If Zwede was enrolled in school, he was permitted to have contact with other students only during regular school hours and at officially sanctioned school functions.

Zwede struggled to comply with these conditions.  In September 2014, within a month of the judgment and sentence, the DOC notified the court that Zwede had failed to register as a sex offender as required.  The trial court found the violation to be willful and ordered Zwede confined for 20 days as a sanction. In January 2015, the DOC detained Zwede again for having contact with his victim. It notified the court of Zwede's violation, and Zwede served another 12 days in jail before being released by the court in February 2015.

---

[3] Tests for General Educational Development which, when successfully completed, are considered equivalent to a high school diploma.

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

Zwede began sexual deviancy treatment in October 2014. In progress reports submitted to the court, the treatment provider believed Zwede was making satisfactory progress in treatment and was a low risk for committing another sex offense. In August 2015, Zwede's treatment provider reported that he had had unauthorized contact with a minor and, at a subsequent violation hearing, the court found Zwede had committed a willful violation and ordered Zwede to arrange with the DOC to attend "Thinking for a Change" programming.

At Zwede's annual SSOSA review hearings in September 2016 and October 2017, the trial court found Zwede to be in compliance with the SSOSA sentence based on reports from his treatment provider and the DOC.

In December 15, 2017, Zwede's treatment provider, Pasha Grant, informed the court that she was unaware of any violations of SSOSA conditions by Zwede, and he had successfully completed treatment.

In June 2018, the State notified the court that Zwede had engaged in six new violations. These violations led the State to move to revoke the SSOSA in January 2019. The State alleged the following violations as the basis for revocation:

> Violation 1: Having contact with minors, without prior approval, since on or about 10/31/2016.
>
> Violation 2: Failing to receive prior approval for living arrangements and residence location since on or about 6/3/2018.
>
> Violation 3: Failing to inform supervising [Community Corrections Officer (CCO)] of any dating relationship since on or about 10/31/2016.
>
> Violation 4: Failing to abide by a curfew of 10 p.m. to 5 a.m., since on or about 3/23/2018.

Zwede's CCO, Bryan Dalton, recommended revocation. Dalton testified that in 2018, he discovered that Zwede was living with his sister without Dalton's prior approval. When he visited the sister's home, he discovered three minor children, including a 7-year-old daughter, living in the same home as Zwede, in violation of his SSOSA conditions. When he searched Zwede's cell phone, he found pictures of Zwede holding his minor nephew in his lap. He also discovered text messages between Zwede and his sister in which she appeared to be giving Zwede instructions on how to care for the children in her absence. When police officers interviewed the young children, they confirmed that Zwede was their babysitter.

Dalton further learned that, contrary to Zwede's statements to his treatment provider, he had been having sexual contact with underage girls dating back to October 2016. The treatment provider refused to take Zwede back into treatment because Zwede had not been truthful about his unauthorized contact with minors.

Zwede, now age 26, admitted violations one, two and four. The violations occurred when he was between the age of 24 and 25.

At the conclusion of the evidentiary hearing, the court asked both the State and Zwede's counsel if the court had the authority to impose a term of imprisonment of anything less than 10 years. Zwede's counsel stated that while the court could modify the sentence by imposing new conditions, it could not modify the suspended portion of the sentence imposed in 2014. The court asked, "So it's all or nothing?" Zwede's attorney answered in the affirmative.

No. 81186-0-I/7

The court continued the hearing to receive written closing arguments from the parties. In Zwede's closing argument, he asked the court not to revoke the SSOSA. He argued

> Mr. Zwede was between the ages of 19 and 21 when he committed the underlying offenses. He falls squarely within State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015), which examined youth as a mitigating factor for individuals over 18. Citing to Roper v. Simmons, the Washington Supreme Court concluded that '[t]he qualities that distinguish juveniles from adults do not disappear when an individual turns 18 [just as] some under 18 have already attained a level of maturity some adults will never reach." O'Dell, 183 Wn.2d at 695 (internal citations omitted). If Mr. Zwede is to receive a SSOSA, there must be some acknowledgement and understanding that he will need more support and help to succeed at it.

Zwede asked the court to impose 60 days per violation, to run each sanction consecutively, and to order Zwede to complete a full five years of treatment as originally ordered. Zwede did not argue that if the court revoked the sentence, it could or should sentence Zwede to something less than the 10-year minimum sentence in his original judgment and sentence.

At a March 22, 2019 hearing, the trial court found that Zwede had committed willful violations of the SSOSA. In its written order, the court found Zwede had violated the terms and conditions of his suspended sentence by having contact with minors since October 2016, failing to receive prior approval for his living arrangements since October 2016, and failing to abide by his curfew since March 2018. The court revoked the SSOSA and imposed the full suspended indeterminate sentence of 120 months to life in prison.

In its oral ruling, the court stated:

> Okay. So it's difficult because it's a huge decision, but you were given the benefit of a SSOSA and you just didn't comply with it. I wish I had more discretion. I was really hoping you'd work

- 7 -

No. 81186-0-I/8

something out that was more of an intermediate [sentence.] I am going to revoke and impose the suspended sentence. I don't believe I have discretion to do anything other than that. I think we already addressed this. If I could[,] based upon [your] age[,] I might consider something like a midterm option in terms of, well, it's indeterminate life sentence, but in terms of the minimum, I might split it. But he just didn't comply. And it's sad because it's such a huge, huge thing that he was given, but unfortunately that's where I am. For appeal purposes[,] if the Court of Appeals decides I could reconsider the original sentence, you know, I don't think anybody asked me to even consider an exceptional down. I mean why would I if I was going to give him a SSOSA? I would certainly consider it, especially with the treatment [that] was still available.

While the court understood it had the discretion not to revoke the SSOSA, it did not find that option appropriate. But it expressed a clear preference, if it had the discretion to do so, to impose an exceptional sentence "so he's not facing as much time given his age now and his age at the time of the offenses."

Three days later, Zwede filed a motion for reconsideration of the court's imposition of the indeterminate sentence. For the first time, Zwede argued that the court could and should impose a 60-month sentence as an exceptional downward departure from the sentence imposed in 2014. He contended that the court had the discretion to modify his sentence under O'Dell because Zwede was between 19 and 20 when he committed his underlying offense. He argued:

> [E]ven though Mr. Zwede's hearing is a revocation hearing and not a new sentencing hearing, the Eighth Amendment of the United States Constitution, Art. I, § 14 of the Washington Constitution, and the Miller decision itself require this Court to consider Mr. Zwede's youthfulness at the time the underlying offense occurred whenever it imposes penalty on Mr. Zwede.

Zwede contended that imposing a 120-month sentence violated the Eighth Amendment and article I, section 14. Zwede argued:

> While ordinarily, once a SSOSA is revoked, the original sentence is reinstated, in order to cure the constitutional defect of Mr. Zwede's

- 8 -

> 120 month sentence, he submits this Court would be permitted to amend its order revoking the SSOSA to impose a sentence of 60 months, and not 120 months. The more prudent course of action would be to vacate the original sentence and impose an exceptional downward of 60 months (citations omitted).

The court ordered the State to respond by April 8, 2019. Although we do not have the State's responsive brief in the record, the State appears to have argued that Zwede's request for the 60-month sentence was a breach of his plea agreement. This assertion led Zwede and his attorney to delay a hearing on the motion until they could verify that the State did not intend to move to withdraw the plea.

By the time Zwede's motion was heard in February 2020, the original sentencing judge had retired. At this hearing, Zwede argued that the court had discretion to impose a lesser sentence based on youthfulness. The State maintained that a revocation hearing is not a sentencing hearing and Zwede was sentenced in 2014; if he sought to challenge the original sentence, he had to file a personal restraint petition under ch. 10.73 RCW. The State further argued that Zwede had received the benefit of the plea bargain and had Zwede been convicted of two counts, he would have been ineligible for a SSOSA. Id. at 33. Finally, the State contended that under State v. Shove, 113 Wn.2d 83, 776 P.2d 132 (1989), the court had no inherent authority and only limited statutory authority to modify any sentence after it had been imposed.

The trial court denied Zwede's motion for reconsideration. While recognizing that case law on the sentencing of juveniles and youthful offenders was evolving, it concluded that the procedural aspects of the case made it distinguishable from O'Dell because "this was a negotiated plea and an agreement

- 9 -

by the parties for certain conditions." The court found that the judgment and sentence clearly indicated the consequences of a revocation:

> [T]he defense argument[,] while . . . theoretically interesting, I don't think quite applies here, because this was a revocation of a [suspended] sentence. And when the court is revoking a . . . suspended sentence, it -- the SSOSA statute is a very particular statute that governs exactly what is to be done in these situations. And youthfulness in a revocation hearing is something that may be considered if the court had some discretion in terms of what happens on a revocation. But the SSOSA statute is very clear and very specific about the reasons why certain crimes are eligible for a SSOSA alternative and why the SSOSA structure should be imposed. . . .
>
> Whether that statutory scheme is constitutional when it's involving a youthful offender, I'm not sure that's before the court here today. . . . But as it is right now[,] as the law is -- and as the sentence structure was negotiated by the parties[,] the court does not find that there is -- a revocation hearing is equivalent to a sentencing hearing. And because this was a negotiated sentence and a negotiated plea that the parties agreed to, the court will follow the agreement of the parties. And it -- the court indicated it would do so when it accepted the plea back in 2014. And so I think it is appropriate to continue to follow that agreement that the parties agreed to, which the court adopted in 2014.

> Zwede appeals.

## ANALYSIS

### 1.     Statutory Interpretation and SSOSA Revocation

Zwede first contends that the SSOSA statute provides the trial court with the discretion to impose a sentence other than the original suspended sentence at a revocation hearing. We disagree.

This court reviews the meaning of a statute de novo. State v. Marjama, 14 Wn. App. 2d 803, 806, 473 P.3d 1246 (2020). The court's objective when interpreting a statute is to determine the legislature's intent. Id. The best indication

- 10 -

No. 81186-0-I/11

of legislative intent is the language enacted by the legislature, so if the meaning of a statute is plain on its face, the interpreting court "give[s] effect to that plain meaning." State v. Ervin, 169 Wn.2d 815, 820, 239 P.3d 354 (2010) (internal quotation marks omitted) (quoting State v. Jacobs, 154 Wn.2d 596, 600, 115 P.3d 281 (2005)). The plain meaning of a statute is to be discerned from the ordinary meaning of the language under scrutiny, in addition to the context of the statute in which the language is found, related provisions, and the statutory scheme as a whole. Jacobs, 154 Wn.2d at 600.

If there are multiple reasonable interpretations of a statute's plain meaning, it is ambiguous. State v. Dennis, 191 Wn.2d 169, 173, 421 P.3d 944 (2018). Where a statute is ambiguous, the court relies on principles of statutory construction, legislative history, and relevant case law to decipher the legislative intent. Id. "After such analysis, if a criminal statute still remains ambiguous, the rule of lenity requires courts to construe the statute strictly in favor of the defendant." State v. Manuel, 14 Wn. App. 2d 455, 461, 471 P.3d 265 (2020).

RCW 9.94A.670(11) provides:

> The court may revoke the suspended sentence at any time during the period of community custody and order execution of the sentence if: (a) The offender violates the conditions of the suspended sentence, or (b) the court finds that the offender is failing to make satisfactory progress in treatment. . . . (emphasis added).

Zwede argues that by using the word "may" rather than "shall," the legislature indicated its intent to make "execution of the original sentence" permissive. Zwede asserts that the legislature's failure to use "shall" before the verb "order," as it did

- 11 -

No. 81186-0-I/12

in the DOSA[4] statute, indicates that the SSOSA statute provides discretion. But as Zwede admits, State v. Dahl, 139 Wn.2d 678, 683, 990 P.2d 396 (1999), and State v. Miller, 159 Wn. App. 911, 918, 247 P.3d 457 (2011), both held that "[o]nce a SSOSA is revoked, the original sentence is reinstated."

Zwede argues this language in both cases is dicta. Even if we were to accept that argument, the context in which the language of RCW 9.94A.670(11) arises, as well as the statutory scheme as a whole, support the State's position that RCW 9.94A.670(11) requires execution of the original, full suspended sentence when a court revokes the SSOSA.

First, under RCW 9.94A.670(4), if a court determines that a SSOSA is appropriate, the court "shall" impose a sentence pursuant to RCW 9.94A.507, with a minimum term within the standard sentence range. This language is mandatory, not permissive. If the standard range is less than eleven years of confinement, the court "may suspend" the execution of "the sentence." Id. It does not give the court the option of suspending just a portion of the sentence. If the court chooses to suspend "the sentence," meaning the indeterminate sentence imposed under RCW 9.94A.507, the court "must impose" certain conditions, including a term of confinement of up to twelve months, a term of community custody equal to the length of the suspended sentence, treatment for up to five years and prohibitions and affirmative conditions identified in the offender's treatment plan. RCW 9.94A.670(5)(a)-(d). In addition, the court "may impose" additional crime-related prohibitions or require the offender to report to the court or a community corrections

---

[4] Drug Offender Sentencing Alternative, RCW 9.94A.660.

officer. RCW 9.94A.670(6). The court "shall conduct" a hearing at least once a year to verify the offender's progress in treatment. RCW 9.94A.670(8)(b). If an offender violates mandatory conditions imposed by the court pursuant to RCW 9.94A.670(5)(d) more than once, DOC "shall" refer the violation to the court and recommend revocation "of the suspended sentence." RCW 9.94A.670(10)(b). Subsection 11 then gives the court the discretion to "revoke the suspended sentence." It does not say that the court may revoke "a part of the suspended sentence."

We conclude that under this statutory scheme, if the court revokes the suspension of a prison term under RCW 9.94A.670(11), then the sentence mandated by RCW 9.94A.670(4) is the only sentence the legislature allows the court to execute. To interpret the language as Zwede advocates would require us to ignore the mandatory nature of the sentencing requirement in RCW 9.94A.670(4).

2.  Constitutional Challenge and Youthfulness

Zwede next argues that both the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution require the trial court, at a SSOSA revocation hearing, to consider whether his youthfulness at the time of his underlying crime is a mitigating factor and to impose a sentence below the standard range if it determines that Zwede's youthfulness contributed to the commission of his crime. Under the circumstances of this case, we disagree.

We review constitutional challenges de novo. City of Seattle v. Evans, 182 Wn. App. 188, 191, 327 P.3d 1303 (2014). The Eighth Amendment prohibits

No. 81186-0-I/14

infliction of "cruel and unusual punishments." Our state constitution prohibits "cruel punishment." WASH. CONST. art. I, § 14. Our state's constitution is more protective than the Eighth Amendment, so we will consider whether Zwede's sentence violates our state constitution. See State v. Moretti, 193 Wn.2d 809, 820, 446 P.3d 609 (2019).

As a preliminary matter, the State argues that our review in this direct appeal is limited to whether the trial court abused its discretion in revoking Zwede's suspended sentence and, because Zwede was between 24 and 25 years old when he violated the terms of his SSOSA, his age at the time of the underlying crime is irrelevant. We reject this argument.

We necessarily must consider the original sentencing hearing where the suspended indeterminate sentence was imposed in order to understand whether a constitutional violation occurred. The imposition of the original sentence at the plea hearing clearly interacts with the ruling on revocation such that it is a proper inquiry for this court under RAP 2.4(b). We adopt the reasoning of State v. Harris, in which Division Three of this court clarified the judgment and sentence that imposes a sentencing alternative prejudicially affects the order revoking that sentencing alternative such that it is proper for our review. No. 36951-0-III, slip op. at 5-6, (Wash. Ct. App. Dec. 3, 2020) (unpublished),[5] (citing Adkins v. Alum. Co. of Am., 110 Wn.2d 128, 134-35, 750 P.2d 1257 (1988)). Similarly, in State v. Langland, Division Two of this court rejected a constitutional challenge to a suspended sentence as not ripe for review until revocation as the petitioner was

---

[5] https://www.courts.wa.gov/opinions/pdf/369510_unp.pdf.

not yet serving the life sentence he sought to challenge. 42 Wn. App. 287, 291-93, 711 P.2d 1039 (1985). Despite the State's urging, it would be improper to cabin our review only to the revocation hearing, effectively circumventing Zwede's ability to ever bring a constitutional challenge to his original sentence.[6]

Zwede argues the trial court erred in imposing a 120-months-to-life indeterminate sentence without considering his youthfulness at the time he committed his crime and exercising the discretion to impose a sentence shorter than the one mandated by statute.

Case law addressing the sentencing of juvenile and youthful offenders has seen significant development in recent years, both in the United States Supreme Court and in our Supreme Court. We are in the midst of what some scholars refer to as the "children are different" era, named for a series of United States Supreme Court Eighth Amendment cases recognizing the fundamental differences between children and adults. See Gupta-Kagan, J., Beyond "Children Are Different": The Revolution in Juvenile Intake and Sentencing, 96 WASH. L. REV. 425 (2021). This Supreme Court jurisprudence, sometimes referred to as the "Miller trilogy," has significantly limited the extent to which children can be subjected to the most severe criminal court sentences. Drinan, C., The Miller Trilogy and the Persistence of Extreme Juvenile Sentences, 58 AM. CRIM. L. REV. 1659, 1659 (2021).

The Miller trilogy began with Roper v. Simmons, 543 U.S. 551, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), in which the Court held that the Eighth Amendment prohibition against cruel and unusual punishment precludes sentencing juveniles

---

[6] As such, we need not consider the parties' alternate argument in briefing that this panel could convert Zwede's direct appeal to a PRP and review the issues in that context.

No. 81186-0-I/16

to death. The <u>Roper</u> court relied on scientific evidence demonstrating that juveniles lack maturity and impulse control, are more susceptible to negative peer influences, and have a more transitory character, all of which make them developmentally different from adults. <u>Id.</u> at 569-70. Because of these differences, the court held that juveniles are less culpable than adults and the goals of retribution and deterrence cannot justify imposing the death penalty on them. <u>Id.</u> at 572-73.

Five years later, the Supreme Court decided <u>Graham v. Florida</u>, 560 U.S. 48, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010), holding that the Eighth Amendment precludes life imprisonment without parole for juveniles who commit non-homicide offenses. The <u>Graham</u> court embraced the same science underlying the decision in <u>Roper</u> and mandated that States provide "some meaningful opportunity to obtain release based on demonstrated maturity and rehabilitation." <u>Id.</u> at 75.

Finally, in 2012, in <u>Miller v. Alabama</u>, 567 U.S. 460, 479, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), the Supreme Court held the Eighth Amendment permits a life-without-parole sentence for juvenile defendants who commit a homicide <u>only</u> if the sentence is not mandatory and the sentencing body has discretion to impose a lesser punishment. <u>Miller</u> requires the sentencing court to engage in an "individualized consideration" of the juvenile's offense and developmental environment to determine if the minor is "the rare juvenile offender whose crime reflects irreparable corruptions." <u>Id.</u> at 477-80.

After <u>Miller</u>, our Supreme Court has, on several occasions, considered the role of youth as a critical factor in sentencing. In <u>O'Dell</u>, our Supreme Court held

- 16 -

No. 81186-0-I/17

that, under the SRA, a defendant's youthfulness can support an exceptional sentence below the standard range applicable to an adult felony defendant. Id. at 699. O'Dell was convicted of second degree rape of a child for a crime he committed 10 days after his 18th birthday. Id. at 683-84. At sentencing, O'Dell requested an exceptional sentence below the standard range on the basis that his youth significantly impaired his capacity to appreciate the wrongfulness of his conduct. Id. at 685. The trial court ruled that it did not have the discretion to consider youth as a mitigating circumstance. Id.

Our Supreme Court disagreed. Citing the "clear connection between youth and decreased moral culpability for criminal conduct," the court held that "a trial court must be allowed to consider youth as a mitigating factor when imposing a sentence on an offender like O'Dell, who committed his offense just a few days after he turned 18." Id. at 695-96. The ruling in O'Dell, however, was based solely on the Supreme Court's interpretation of the SRA and did not impose, as a constitutional mandate, a requirement that sentencing courts consider an adult offender's youthfulness before determining an appropriate sentence.

In 2017, our Supreme Court issued its decision in State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017). In that case, Zyion Houston-Sconiers and Treson Roberts, ages 17 and 16, went out on Halloween and, while armed with a revolver, "robbed mainly other groups of children, and they netted mainly candy." Id. at 8. The defendants were tried and sentenced in adult court. Id. At sentencing, the trial court sentenced both juveniles to zero months for each substantive crime they had committed but, because the sentences were subject to

- 17 -

No. 81186-0-I/18

multiple, mandatory consecutive firearm enhancements, sentenced the defendants to 312 and 372 months. Id. at 13.

Our Supreme Court reversed their sentences, holding, in accordance with Miller, that "sentencing courts must have complete discretion to consider mitigating circumstances associated with the youth of any juvenile defendant, even in the adult criminal justice system." Id. at 21. The court explained that "[t]rial courts must consider mitigating qualities of youth at sentencing and must have discretion to impose any sentence below the otherwise applicable [Sentencing Reform Act (SRA)] range and/or sentence enhancements." Id. (emphasis added).

But the holding of Houston-Sconiers applied only to juvenile defendants sentenced in adult court; it did not extend to young adults, such as Zwede, who were over the age of 18 at the time of their crimes. See State v. Gregg, 196 Wn.2d 473, 482, 474 P.3d 539 (2020) ("our cases recognize that children are different and procedural differences exist for juveniles sentence in adult courts"); State v. Brown, 13 Wn. App. 2d 288, 291, 466 P.3d 244 (2020) (Houston-Sconiers applies only to juvenile defendants).

Next, in State v. Bassett, 192 Wn.2d 67, 90, 428 P.3d 343 (2018), our Supreme Court held that article I, section 14 forbids mandatory life without parole (LWOP) sentences for juveniles. In In re Pers. Restraint of Monschke, 197 Wn.2d 305, 482 P.3d 276 (2021), the court was asked to extend the constitutional holding of Bassett to offenders who were 19 and 20 at the time they committed their crimes. 197 Wn.2d at 312. In that case, Dwayne Bartholomew and Kurtis Monschke were convicted of aggravated first degree murder for crimes they committed when 20

- 18 -

No. 81186-0-I/19

and 19, respectively, and sentenced to life in prison without the possibility of parole, a mandatory and nondiscretionary sentence under RCW 10.95.030. Id. at 306. The sole issue in the case was whether article I, section 14 of the state constitution or the Eighth Amendment permits a mandatory LWOP sentence for young, but not juvenile, defendants like Bartholomew and Monschke. Id.

Citing the progression of cruel and unusual punishment jurisprudence, as well as the inherently flexible nature of the concept of the line between childhood and adulthood, the Supreme Court held that "[o]ur aggravated murder statute's requirement of LWOP for all defendants 18 and older, regardless of individual characteristics, violates the state constitution." Id. at 326. In the opinion's concluding paragraph, the court summarized its holding:

> There is no meaningful cognitive difference between 17-year-olds and many 18-year-olds. When it comes to Miller's prohibition on mandatory LWOP sentences, there is no constitutional difference either. Just as courts must exercise discretion before sentencing a 17-year-old to die in prison, so must they exercise the same discretion when sentencing an 18-, 19-, or 20-year-old.

Id. at 329. It vacated Monschke's and Bartholomew's mandatory LWOP sentences and remanded their cases for a new sentencing hearing "at which the trial court must consider whether each defendant was subject to the mitigating qualities of youth." Id.

Zwede argues that under this line of cases—Miller, O'Dell, Houston-Sconiers and Monschke—a mandatory indeterminate sentence for a crime he committed at the age of 19 violates article I, section 14's prohibition on cruel punishment. He argues that he is entitled to a new sentencing hearing for the court

- 19 -

No. 81186-0-I/20

to consider whether his youthfulness at the time of his underlying crime merits a shorter sentence. We reject this argument for four reasons.

First, none of these cases addressed the constitutionality of an indeterminate sentence for a youthful offender. Monschke addressed only the constitutionality of a mandatory, nondiscretionary sentence of life without parole for youthful offenders under the aggravated murder statute. The reasoning of Monschke was anchored in Miller's recognition that, where youthfulness is a contributory factor in the defendant's commission of their offense, there is a greater chance that the defendant will benefit from rehabilitation. See Miller, 567 U.S. at 472 ("transient rashness, proclivity for risk, and inability to assess consequences—both lessened a child's moral culpability and enhanced the prospect that, as the years go by and neurological development occurs, his deficiencies will be reformed.") (quotations omitted). The United States Supreme Court said "[l]ife without parole forswears altogether the rehabilitative ideal. It reflects 'an irrevocable judgment about [an offender's] value and place in society,' at odds with a child's capacity for change." Id. at 473 (citations omitted). Monschke recognized that a mandatory life sentence without the possibility of parole will never serve the goal of rehabilitation.

Zwede did not receive an LWOP sentence and does not face the same punishment as did the defendants in either Monschke or Miller. At the original sentencing hearing, the court imposed, and suspended, an indeterminate sentence of 10 years to life in prison. As an offender sentenced under RCW 9.94A.507, he is subject to release and supervision decisions of the State

- 20 -

No. 81186-0-I/21

indeterminate sentence review board (ISRB). RCW 9.95.002, RCW 9.95.017. Before serving the minimum term, Zwede has a statutory right to an "end of sentence review" and a hearing before the ISRB. RCW 9.95.420. The board "shall order the offender released," unless it determines by a preponderance of evidence that, despite conditions of release, it is more likely than not that Zwede will commit sex offenses if released. RCW 9.95.420(3)(a). Because Zwede does not face life without parole and will have the opportunity to be released after serving the minimum sentence, his sentence does not reflect an "irrevocable judgment" that he lacks the capacity for change. See State v. Scott, 190 Wn.2d 586, 416 P.3d 1182 (2018) (juvenile offender who received de facto life sentence for murder could present evidence of his youth at time of crime when seeking parole from ISRB after serving 20 years under RCW 9.94A.730).

Second, no Washington court has extended the holding of Monschke or any of the other cases cited by Zwede to an adult offender, albeit a youthful one, who was sentenced to a period of incarceration shorter than an actual or de facto life sentence. This court, in In re Pers. Restraint of Forcha-Williams, 18 Wn. App. 2d 167, 176, 490 P.3d 255 (2021), addressed the constitutionality of an indeterminate sentence of 120-months to life for a 16-year-old defendant convicted of second degree rape. In that context, we held that the court had the discretion to impose an exceptional sentence below the statutory maximum term. Id. at 181. But that case, like Houston-Sconiers, was based on our Supreme Court's jurisprudence as it relates to the sentencing of juvenile offenders. It did not discuss the constitutionality of an indeterminate sentence for offenders who committed sex

- 21 -

No. 81186-0-I/22

crimes at the age of 19 or 20. See also In re Pers. Restraint of Ali, 196 Wn.2d 220, 235, 474 P.3d 507 (2020) ("Houston-Sconiers applies to adult standard range sentences as well as mandatory enhancements under the SRA imposed for crimes committed while the defendant was a child"); State v. Rogers, 17 Wn. App. 2d 466, 487 P.3d 177 (2021) (affirming exceptional mitigated sentence based on youth of 16-year-old defendant).

Third, Zwede's case arises in a unique procedural posture. He entered into a plea agreement under which he agreed to, and jointly recommended that the court impose, a SSOSA sentence. He had the option of arguing for an exceptional sentence of less than 10 years to life as required by RCW 9.94A.507, but instead opted to seek and then actually received the benefit of an alternative sentence under which he could have served no time at all in prison had he followed his community custody conditions. Zwede's sentence, as imposed, did not in fact involve any mandatory period of incarceration.

Finally, Zwede was not a youthful offender when he violated his SSOSA conditions; he was a 24- or 25-year-old adult. According to Zwede's expert, Jenny Johnson-Riley, from a neuropsychological perspective, human brains are fully developed by the age of 25. There is no evidence that Zwede's decisions to violate his SSOSA conditions and to expose himself to the risk of revocation of the suspended sentence was the result of his cognitive development. Because his decisions as a 24- or 25-year-old adult do not implicate a youthful cognitive development, the events triggering the revocation of his suspended sentence are unrelated to our constitutional "children are different" jurisprudence.

- 22 -

No. 81186-0-I/23

For these reasons, we conclude the trial court did not violate Zwede's constitutional rights when it initially imposed the negotiated SSOSA sentence or when it refused to consider Zwede's youthfulness at the time of his crime at the revocation hearing.

Zwede raises a related argument that he received ineffective assistance of counsel when he was originally sentenced in 2014 because his attorney failed to raise his youthfulness as a mitigating circumstance at the original sentencing hearing. We also reject this argument.

Whether a defendant received ineffective assistance of counsel is a mixed question of fact and law that we review de novo. In re Pers. Restraint of Fleming, 142 Wn.2d 853, 865, 16 P.3d 610 (2001). To demonstrate ineffective assistance of counsel,

> [f]irst, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). See also State v. Thomas, 109 Wn.2d 222, 225-26, 743 P.2d 816 (1987). The defendant must show (1) his counsel's representation fell below a minimum objective standard of reasonableness based on all the circumstances, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the outcome would have been different. State v. Benn, 120 Wn.2d 631, 663, 845 P.2d 289 (1993). "There is a strong presumption that counsel has rendered adequate

- 23 -

No. 81186-0-I/24

assistance and has made all significant decisions in the exercise of reasonable professional judgment." Id. at 665.

Zwede fails on the first prong of this test. He has not established that his attorney's strategy in pursuing a SSOSA instead of arguing for an exceptional sentence fell below the professional standard of reasonableness. In securing a SSOSA as part of a plea agreement, Zwede's attorney ensured that Zwede would face no confinement whatsoever if Zwede complied with the SSOSA conditions. There is no evidence before us to suggest that the State would have agreed to recommend a SSOSA for Zwede had he sought an exceptional downward departure from the negotiated 120-month standard range sentence. He has not established that Zwede received ineffective assistance of counsel.

Accordingly we affirm the revocation of the SSOSA and the imposition of the indeterminate sentence to which Zwede agreed in 2014.[7]

Andrus, C.J.

CONCUR:

Verellen J.

___

[7] In a Statement of Additional Grounds, Zwede alleges his community custody officer was aware of his contacts with the Running Start students in his class because he had disclosed this fact to his treatment provider and it was included in a status report to DOC. He further claims that his CCO was aware of his homelessness and the impact it had on his ability to comply with DOC-approved community custody conditions. We do not review matters outside the record on direct appeal. State v. McFarland, 127 Wn.2d 322, 338, 338 n.5, 899 P.2d 1251 (1995) (matters outside record must be raised in personal restraint petition). Nor do we review matters that are insufficiently argued. See RAP 10.10(c) (court will not consider a defendant's statement of additional grounds for review if it does not inform the court of the nature and occurrence of alleged errors). We decline to address the claims Zwede raised in his Statement of Additional Grounds.

- 24 -

For the current opinion, go to https://www.lexisnexis.com/clients/wareports/.

State of Washington v. Daniel Achaw Zwede, No. 81186-0-I

HAZELRIGG, J. (dissenting) — I depart from the majority's conclusion that Daniel A. Zwede did not receive a de facto life sentence and would hold, as this court has previously, that an indeterminate sentence, by design, has the ability to become a life sentence, thus triggering additional constitutional considerations. As a result, Zwede is entitled to the same constitutional considerations set out in In re Personal Restraint of Monschke; that certain protections extend to youthful offenders, and that the court has broad discretion as to sentencing in those contexts. 197 Wn.2d 305, 482 P.3d 276 (2021). My departure from the majority on these points is rooted in the consistent theme of recent decisions that the distinctions of juveniles and youthful offenders are effectively now legal semantics in light of our Supreme Court's conclusion that there is "no constitutional difference" as to brain development within these two categories, such that discretion must be exercised when sentencing members of either group.[1] Monschke, 197 Wn.2d at 329. State v. Rogers, 17 Wn. App. 2d 466, 472–76, 487 P.3d 177 (2021); In re Pers. Restraint of Forcha-Williams, 18 Wn. App. 2d 167, 181, 490 P.3d 255 (2021). I seek to illuminate an alternative to the majority's holding on these points and frame a holistic understanding of what I believe our case law requires with regard to the discretion of a trial court to depart from

---

[1] A juvenile offender has not yet reached the age of majority. RCW 26.28.010. While a "youthful" offender has reached majority, emerging science suggests that their brain development may yet be incomplete. Case law continues to refine the age range that captures youthful offenders.

No. 81186-0-I/2

otherwise mandatory sentencing schemes, even in the context of an indeterminate sentence, after consideration of youthfulness.

The majority frames Zwede's primary argument as "under this line of cases—Miller,[2] O'Dell,[3] Houston-Sconiers[4] and Monschke—a mandatory indeterminate sentence for a crime he committed at age 19 violates [Washington State Constitution] article I, section 14's probation on cruel punishment." I understand Zwede as asserting that the line of cases requiring the sentencing court to utilize its discretion and consider youthfulness as a potentially mitigating factor in sentencing necessarily includes his particular circumstances as a youthful offender who received an indeterminate sentence. Zwede argues that article I, section 14 of the Washington State Constitution provides the trial court discretion to consider youthfulness as a basis for imposing an exceptional sentence even in the context of otherwise mandatory sentences set out by the legislature.

I.  Zwede's Indeterminate Sentence is a De Facto Life Sentence with the Possibility of Parole

A sentence of life in prison without parole has been deemed unconstitutional for juvenile offenders. See Graham v. Florida, 560 U.S. 48, 82, 130 S. Ct. 2011, 176 L. Ed. 2d 825 (2010) (life without parole sentences imposed on juveniles for non-homicide offenses determined to be unconstitutional); Miller, 567 U.S. at 479 ("[T]he Eighth Amendment [to the United States Constitution] forbids a sentencing scheme that mandates life in prison without possibility of parole for juvenile

---

[2] Miller v. Alabama, 567 U.S. 4, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012).
[3] State v. O'Dell, 183 Wn.2d 680, 358 P.3d 359 (2015).
[4] State v. Houston-Sconiers, 188 Wn.2d 1, 391 P.3d 409 (2017).

No. 81186-0-I/3

offenders."). "Critically, the Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line." Houston-Sconiers, 188 Wn.2d at 20. An indeterminate sentence, such as the one at issue here, is effectively a life sentence with the possibility of parole, subject to the decision of the Indeterminate Sentence Review Board (ISRB). RCW 9.95.017.

The majority relies on State v. Scott for the proposition that Zwede's sentence is not an "irrevocable judgment" since he will have an opportunity for relief at the discretion of the ISRB after serving the minimum sentence, 120 months. 190 Wn.2d 586, 416 P.3d 1182 (2018). However, this ignores the more recent cases of In re Pers. Restraint of Ali and In re Pers. Restraint of Domingo-Cornelio which are closer factually to Zwede's circumstances and which frame the court's inquiry as whether there is an adequate remedy available such that resentencing for consideration of youthfulness is unnecessary. Ali, 196 Wn.2d 220, 474 P.3d 507 (2020); Domingo-Cornelio, 196 Wn.2d 255, 474 P.3d 524 (2020).

In Ali, the Supreme Court rejected the argument that a juvenile sentenced to 312 months had an adequate remedy available, short of resentencing, due to their ability to petition the ISRB for early release after 20 years. 196 Wn.2d at 246. In Domingo-Cornelio, the companion case to Ali, the court expressly considered whether RCW 9.94A.730 provided a sufficient remedy such that resentencing was unnecessary because in that case "the Miller-fix[5] statute would not provide an

---

[5] RCW 10.95.030; .035

- 3 -

No. 81186-0-I/4

adequate remedy for a petitioner sentenced to 20 years because it would not allow early release until he served the full sentence imposed in violation of Houston-Sconiers." Id. at 246 n.7 (citing Domingo-Cornelio, 196 Wn.2d at 269 n.8). The Supreme Court found Ali's sentence of 312 months was more similar to Domingo-Cornelio's 240 month prison term than to Scott's 900 month sentence such that they determined, after Ali had established prejudice, his ability to petition for early release was a similarly inadequate remedy. Id. at 246–47, n.7.

Zwede's case is equally compelling in that his minimum sentence is 120 months in prison and the record clearly demonstrates that two different trial court judges indicated a desire to impose a lower sentence. While Zwede is not entitled to relief under the Miller-fix statute, the court's reasoning in Ali and Domingo-Cornelio supports the conclusion that the ability to petition the ISRB for release at the completion of his minimum sentence is not an adequate remedy here either. Given the facts presented by Zwede's case, and the more recent and directly applicable authority provided by the Supreme Court, Scott does not control here.

II.     Zwede is Entitled to the Same Constitutional Protections Extended to Youthful Offenders under Monschke

More critical than the question of whether an adequate remedy is available to Zwede, however, is the fact that his sentence is constitutionally deficient because it was imposed without consideration of youthfulness and because the trial court was unaware of its unfettered discretion if it found youthfulness was a mitigating factor that contributed to the underlying criminal conduct. If a sentencing court has considered youth and reaches such a conclusion as to its impact on the

- 4 -

crime before the court, "the exceptional sentencing requirements imposed by the SRA are simply no longer applicable." Rogers, 17 Wn. App. 2d at 476. Our state's highest court recently held that a mandatory sentence of life without parole is unconstitutional where the individual was a youthful offender at the time of the crime. Monschke, 197 Wn.2d at 329. Key to the court's opinion in Monschke was the fact that the aggravated murder statute, which required life without parole for all individuals over the age of 18, did not allow for discretion based on the mitigating qualities of youth. Id.

Soon after the Supreme Court issued its opinion in Monschke, this court held that consideration of youthfulness is necessary in the context of an indeterminate sentence and is a proper basis for deviating from the constraints of the SRA that otherwise apply to adult offenders. Forcha-Williams, 18 Wn. App. 2d 167. Forcha-Williams explicitly held that article I, section 14 of the Washington Constitution provides sentencing courts with discretion to impose a determinate sentence on a juvenile offender for a crime otherwise subject to an indeterminate sentence under RCW 9.94A.507. Id. at 170. Like Forcha-Williams, Zwede also received an indeterminate sentence based on RCW 9.94A.507, but with the benefit of a Special Sex Offender Sentencing Alternative (SSOSA). See RCW 9.94A.670.

Though Forcha-Williams involved a juvenile[6] who received an indeterminate sentence, we may not disregard the recent case law in our state acknowledging that youthful offenders should be provided many of the same considerations as juveniles. See Monschke, 197 Wn.2d at 313 (holding 19 and

---

[6] Forcha-Williams was 16-years-old when he committed the crime at issue in his appeal.

No. 81186-0-I/6

20-year-olds "must qualify for some of the same constitutional protections."). Our Supreme Court has recognized that "no meaningful neurological bright line exits between age 17 and age 18 or, as relevant here, between age 17 on one hand, and ages 19 and 20 on the other hand." Id. at 326. Consideration of the reasoning of these cases as to the underlying questions of age, brain development, and the discretion of the trial court can only lead to the conclusion that Zwede is entitled to resentencing.

III.     The Court has an Obligation to Conduct an Independent Inquiry of Youthfulness even in the Context of a Plea Agreement

Here, Zwede entered a plea of guilty in the context of an agreed resolution, but this fact does not alleviate the sentencing court of its duty to independently consider the role youthfulness may have played in the underlying criminal conduct and, if appropriate, to deviate from the constraints of the SRA. Id. at 329; Rogers, 17 Wn. App. 2d at 475–77. Such an inquiry by the trial court is required under article I, section 14 of our state constitution. Monschke, 197 Wn.2d at 329; see also Houston-Sconiers, 188 Wn.2d at 20 ("[T]he Eighth Amendment requires trial courts to exercise this discretion at the time of sentencing itself, regardless of what opportunities for discretionary release may occur down the line."). This constitutional mandate need not interfere with the ability of the State to enter into negotiated resolutions with the defense, nor place defense counsel in a position to choose between their duty of effective assistance to their client or the risk of a claimed breach of a plea agreement with the State.[7] Even outside of the context

_____

[7] The majority cites as another reason for its holding, "Zwede's case arises in a unique procedural posture" based on the agreed recommendation for a SSOSA. The focus on what Zwede

No. 81186-0-I/7

of an inquiry into the potentially mitigating impact of youthfulness, trial courts have long held the discretion to reject the recommendation of either or both parties at sentencing or otherwise deviate from an agreed resolution. RCW 9.94A.431(2); In re Pers. Restraint of Breedlove, 138 Wn.2d 298, 309, 979 P.2d 417 (1999); See also CrR 4.2(g) ("Written Statement . . . (k) The judge does not have to follow anyone's recommendation as to sentence."). Further, we require trial courts to conduct individual inquiries of defendants in other contexts without disrupting otherwise agreed recommendations. See State v. Blazina, 182 Wn.2d 827, 837–39, 344 P.3d 680 (2015); State v. Malone, 193 Wn. App. 762, 764–66, 376 P.3d 443 (2016).

Zwede reached a plea agreement with the State that avoided trial, but this did not relieve the court of its obligation to comply with the constitutional requirements regarding consideration of Zwede's status as a youthful offender. State v. Gilbert, 193 Wn.2d 169, 176–77, 438 P.3d 133 (2019) ("[T]he court must consider the mitigating circumstances related to the defendant's youth."). Admittedly, SSOSA is a highly unique sentencing alternative with rigidly structured guidelines. See RCW 9.94A.670. However, recent precedent from our State's highest court indicates that even the clearly defined sentencing framework of the SRA is not set in stone once a court finds mitigating qualities of youth which justify departure from those guidelines.

---

could have done to "have served no time at all in prison" ignores the constitutional demands we have come to understand in recent years within the context of sentencing juvenile and youthful offenders. It is a dangerous proposition to place the onus of avoiding a constitutionally impermissible sentence on the youthful offender when the case law squarely sets the responsibility with the sentencing court. (Emphasis omitted)

- 7 -

In <u>Gilbert</u>, the trial court held that it did not have discretion to consider youthfulness for a defendant who was being resentenced based on the <u>Miller</u>-fix statutes. 193 Wn.2d at 172. At the resentencing hearing, Gilbert urged the court to go beyond merely adjusting his sentence of life without the possibility of parole and to "restructure his first degree murder sentence such that it would run concurrently." <u>Id.</u> Though the trial court rejected Gilbert's assertion that it had discretion to do anything besides adjust the aggravated murder sentence from life in prison without parole to 25 years to life, the Supreme Court disagreed and clarified that the trial court did have discretion to consider youthfulness and could resentence as appropriate if it found youthfulness to be a mitigating factor. <u>Id.</u> 172, 176–77. <u>Rogers</u> further reinforces that a sentencing court is provided broad discretion when youthfulness is found to be a mitigating factor, expressly holding that the SRA no longer constrains the trial court's discretion once youthfulness is determined to have contributed to the underlying criminal conduct. 17 Wn. App. 2d at 477. Sentencing alternatives such as a SSOSA are contained within the SRA. RCW 9.94A.670.

Article I, section 14 of our state constitution requires the court to consider whether mitigating qualities of youth exist when sentencing a youthful offender, regardless of whether the case involves an agreed resolution or joint sentencing recommendation. If the court determines that mitigating qualities of youth are present and contributed to the underlying crime, the SRA ceases to constrain the trial court's discretion. Because Zwede's youthfulness was not given consideration at the time of his original sentencing hearing, his sentence is constitutionally

- 8 -

deficient. The fact that he may eventually be able to seek release by petitioning the ISRB after roughly a decade in prison is not an adequate remedy for this deficiency.

IV.     Zwede was Prejudiced by the Sentencing Court's Error

"'Our courts have long held the existence of an erroneous sentence requires resentencing.'" Forcha-Williams, 18 Wn. App. 2d at 179 (internal quotation marks omitted) (quoting In re Pers. Restraint of Call, 144 Wn.2d 315, 333, 28 P.3d 709 (2001)). But, the party "alleging constitutional error has the threshold, prima facie burden of showing by a preponderance of the evidence that he was actually and substantially prejudiced by the alleged error." In re Pers. Restraint of Meippen, 193 Wn.2d 310, 315, 440 P.3d 978 (2019). Actual and substantial prejudice is established when a sentencing court fails to consider mitigating factors of youthfulness and/or does not appreciate its discretion to impose any exceptional sentence in light of that consideration. Domingo-Cornelio, 196 Wn.2d at 268.

Zwede has established that he was actually and substantially prejudiced by the trial court's failure to consider the mitigating factors of youth at his original sentencing. As set out in the majority, the record contains clear statements by two different judges, at the revocation of his SSOSA and the motion on reconsideration, regarding a desire to impose a lesser sentence. This establishes that the trial court did not appreciate its discretion to impose anything other than the indeterminate sentence. We have recognized, "absolute discretion does not prevent a court from imposing an indeterminate sentence that considers time for rehabilitation and maturity." Forcha-Williams, 18 Wn. App. 2d at 181. This

absolute discretion "allows courts to determine whether the SRA's minimum term and indeterminate maximum life term required for adults are appropriate in consideration of the mitigating qualities of youth." Id.

Both the Eighth Amendment to the United States Constitution and article I, section 14 of the Washington Constitution require courts to utilize their discretion during sentencing, "regardless of what opportunities for discretionary release may occur down the line." Houston-Sconiers, 188 Wn.2d at 20; Forcha-Williams, 18 Wn. App. 2d at 181. The court was never obligated to accept the recommendation of either party, even if they had negotiated an agreement; a fact of which both the deputy prosecutor and defense attorney were likely well aware as experienced criminal law practitioners. Exercise of the court's full discretion may have resulted in following the agreed recommendation of the parties, or rejecting it and imposing an exceptional sentence based on a finding regarding youthfulness. The constitutional defect here was the failure to conduct the necessary inquiry and impose a sentence based on the resulting information.

V.      Zwede is Entitled to Resentencing under our State Constitution

The majority notes that "no Washington court has extended the holding of Monschke or any of the other cases cited by Zwede to an adult offender, albeit a youthful one, who was sentenced to a period of incarceration shorter than an actual or de facto life sentence."[8]  While this is strictly true, it ignores the nuanced

---

[8] The majority also highlights that "Zwede was not a youthful offender when he violated his SSOSA." This conclusion conflicts with the majority's determination that we properly focus our inquiry on the original sentencing for the crime committed when Zwede was 19 to 20-years-old, squarely falling within the youthful offender range currently acknowledged in our binding precedent. Zwede's assignment of error is based on the constitutionally deficient sentence that was imposed

No. 81186-0-I/11

interaction of Washington's evolving precedent as to youthfulness. Further, Rogers noted that "Houston-Sconiers applies the animating principles of Miller . . . that 'children are different' and that courts must be empowered to treat them differently." 17 Wn. App. 2d at 476. Relying on the "animating principles" of Monschke and Forcha-Williams, it is not an illogical step to conclude that the body of case law on youthfulness and sentencing as a whole does not apply to only those legally defined as juveniles. This has been reinforced by our state's highest court which explicitly held that no meaningful difference exists between those two classes of offenders in terms of the brain development science underlying this shift in jurisprudence. Monschke, 197 Wn.2d at 324–26. Following this proposition, the case law does not foreclose Zwede's entitlement to independent consideration of these potential mitigating factors simply because he was 19 when he committed the underlying crime instead of 17. The research that underpins the federal and state case law on juvenile and youthful offender sentencing repeatedly declares that the science of youth brain development does not draw bright lines based on chronological age. I do not propose a blanket rule that no youthful offender could ever be given an indeterminate sentence, but only emphasize the binding precedent declaring that a trial court has an independent requirement to consider whether youth is a mitigating factor that contributed to the crime, and if it so finds, that an exceptional sentence is within its broad discretion.

---

upon entry of the SSOSA, so his age at the time of the conduct which ultimately led to the revocation is irrelevant to our review.

- 11 -

No. 81186-0-I/12

I respectfully disagree with the majority that our existing case law does not capture the unique facts of Zwede's case, particularly when considering the constitutional demands with regard to a trial court's inquiry and discretion as to the sentence it imposes. I would reverse and remand for resentencing.